21-10376. Each side will have 20 minutes. Thank you, Your Honor. Lisa Mathewson for Mr. Kail. May I reserve two minutes for rebuttal? Your Honors, the jury was allowed to convict Mr. Kail for moonlighting as a paid advisor to Netflix vendors, a conflict of interest that violated Netflix policies. The government's mistaken belief that these allegations tracked the elements of both honest services fraud and property fraud pervades the record. As it said to the jury in summation, Mr. Kail was taking cash and accruing stock options from multiple companies he did business with at Netflix, and in doing so, he defrauded Netflix out of money and deprived his employer of its right to his honest, unconflicted services. With the court's permission, I'd like to begin with the jury instructions because the elements of each of these fraud theories provide the framework for understanding how the error, in fact, was incorporated into various portions of the record. To begin with honest services fraud instructions, Your Honors, we know this jury was confused by them, and we know that because the jury's very first note asked about the definition of a bribe or kickback. In fact, the jury's very first note went to the central dispute in the case, which was, in fact, the theory of the defense, and that was, yes, Mr. Kail was working with these vendors, and yes, Mr. Kail was taking some compensation. The question was, was he being compensated for the advisory services he was providing to them? Can I ask you just two preliminary questions? One would be, so we have a special verdict, so if we were to conclude that the instructions were proper as to either the property fraud or the honest services, is that sufficient to affirm this part of the conviction? It is not, Your Honor, for a number of reasons. Of course, I'll accept as implicit in Your Honor's question that if the instructions are correct, the court is also evaluating sufficiency, although candidly, Your Honor, even if the court were to approve the instructions, the government's proof still failed as a matter of sufficiency. So if we were to conclude that, at least as to one of these theories, the instructions were okay and this evidence was sufficient, what else would there be? There's still the constructive amendment problem, Your Honors, which requires retrial, and there I think we would need to address that no matter what. I think the court would, and it's partially, of course, because these theories were so intertwined, as the court certainly sees from the record. Is there anything else you think we need to address? Well, I think certainly the money laundering, of course, flows from a vacator of the convictions on fraud, but just to go back to Your Honor's specific question about the special verdict form, it's significant, and I know that this is something the court has noted previously in Millheiser and in Yates, the government is well aware of the special verdict form. They invoke the special verdict form in one context only. They say that the special verdict form closes the door on the duplicity argument that we don't raise. So the government has never taken the position that a special verdict form would preclude a retrial, and certainly on the constructive amendment issue, and in my view on – So logically, I'm just not sure why that's – so whether the government takes the position or not, we have to figure this out, and I don't quite understand. I thought usually when there's a constructive amendment claim, and the idea is like some additional count was added constructively, we get rid of the conviction on that count, but not the other counts. I think the constructive amendment, Your Honor, requires a retrial, and the – Well, if you're going to pursue that count still, but say someone's convicted of four different counts, different crimes, if one of them was added constructively, you get rid of that one. If the government wants to retry it, they need a retrial, but if they want to just stand on the other three convictions, I don't think they had to retry the others. That may be then, in this case, Your Honor, as something that flows more naturally from the record itself here, and the just inextricably intertwined nature of the proof and the theories here, because the government really was talking at all times about the existence of a conflict, and it was treating the existence of a conflict and its nondisclosure as sufficient from the pretrial stage all the way through summation and post-trial motions. Okay, but if a court were to review the constructive amendment issue, and if a court were to, let's just say hypothetically disagree with you, and if a court were to say at least one of these two theories, either property fraud or honest services, was properly instructed and sufficient, does a court need to go further and address the other theory, honest services or property fraud? The court certainly always would need to be looking at, well, as Your Honor is saying, would have to be looking at sufficiency. It would also have to look at the money laundering, of course, which flows from honest services, but I think in terms of the remand, the court probably would have discretion to send it back and say, let's let the district judge sort out whether, for example, the theories were so inextricably intertwined that, in fact, a retrial on both is necessary. But I submit, Your Honors, they- But why would you need a retrial at all? I think that's what we're both trying to ask, because given the special verdict, it's the same conviction for fraud with two theories under the verdict. So if one theory still leads to conviction, even if you get rid of the other one, I don't see why you need a retrial. That would be the taint issue, then, Your Honor. With that hypothetical, that would purely be the taint issue because, and really I do believe that the taint is patent on the record here. The taint is from the constructive amendment? The taint is from the constructive amendment and it's from the submission of an invalid property fraud theory to the jury, and of course the way that the honest services instructions went in, that's an invalid theory too. But hypothetically, if one stands. But that taint is something that it's, and to Judge Friedland's question, why it's necessary for a fair trial, Your Honor? Because ultimately, this jury was told things like, Mr. Kyle was engaged in a shakedown and he was, I forget the exact language, but kind of like a mob boss who was shaking down the vendors and then ultimately imposing the cost of his scheme on Netflix. There is real prejudice there and because the government was using the same set of allegations on both and treating them as essentially per se, it would be essential to the fairness of the trial that the remand happen on both given the improper submission of the property fraud theory to the jury. Why doesn't that argument cut the other way and say if all the evidence was the same, there's no constructive amendment? Because Your Honor, they're so inextricably intertwined and I don't think that all the evidence would be the same. I should clarify on that. The government's allegations of fact were the same. And so there's certainly evidence that came in once they had added at the last minute this property fraud theory. Then the government was at least allowed to argue additional things that really the government had previously said were not going to be essential to its proof. And the defense, of course, was prejudiced in that the defense had no opportunity to develop those facts. So consider, for example, the government's argument that the court can infer an improper quid pro quo where the jury could, more to the point, from the theory that these vendors were not in fact worth anything to Netflix. That's something that the government had always said after it had defeated the early motions to dismiss that in fact it didn't have to show that kind of economic harm in order to pursue what it was calling its honest services fraud theory. So the defense had not had an opportunity to develop that. Then when it goes to the jury as the theory of essentially stealing from Netflix, which is really not their theory and still isn't their theory, then the defense realized this is something that probably if we had to rebut that, we could have developed, and it is something that simultaneously then the government, having had this new opportunity with a new property fraud theory in the mix, the government then was using that to leverage as well on the honest services fraud case. Is that not relevant also to the honest services theory, even if it wasn't strictly necessary as part of the proof? Your Honor, the government actually responded to a defense motion in Limine. The defense moved in Limine for a ruling permitting it to develop the value of the services provided, and the government opposed that and said after the courts and bank opinion in, and I will mangle this, Milanovic, right, that that's not relevant, it's not an element of proof, and in fact that was excluded, I believe, pretrial. So the fact that the defense was prevented from putting that on because the government's position was this isn't part of the case is something that would mean that there is in fact prejudice and prejudice that the government leveraged ultimately to use on both the honest services counts as well as the property fraud counts. I'll ask you on the, you know, in a lot of Supreme Court cases in this area, the question has been, is this conduct actually a crime, is it a violation of the federal criminal laws? Here the challenge is being made to the jury instructions. So do you contend that any of these theories are actually legally invalid or they were just wrongly instructed? I think they're, um. There's no amount of instruction, you can't instruct somebody on something that's not a crime. Sure, no, I think that as charged, the honest services fraud theory was legally valid. Now the instructions did not track the elements of the honest services fraud theory, and that is for two reasons, but primary among them is the very one that troubled the jury, and that is the fact that the instructions defined a bribe or kickback as paying a fiduciary for services, and as defense counsel pointed out, that left open the possibility that paying a fiduciary for providing advisory services rather than services in his capacity as an employee would be a ground for conviction. When the jury came back and asked for there to be a bribe or kickback, does the payer need to know, I'm paraphrasing on that latter part, does the payer need to know that it is in connection with services other than lawful services, the jury was teeing up exactly the confusion, exactly the heart of the theory of defense, as well as the key prosecution theory as well. Then couple that with the court's error on materiality. It was the court's decision to instruct on materiality in a way that sua sponte, injected vagueness, and that the court also acknowledged was deeply troubling here, your honors, and of course as the court knows from the briefing, what happened there was initially the government had acknowledged that yes, Netflix is the only charge victim, and there needs to be, as in the indictment, a materially false or fraudulent representation, et cetera, et cetera, to Netflix. When the- I have trouble. It seems like you're arguing that the jury wouldn't have known that the harm had to be to Netflix, but it seems like that was clear from the other instructions. So I have trouble, I mean, there were instructions that an intent to defraud by depriving Netflix of the right to honest services, false or fraudulent pretenses, representations, promises or omissions are directed at Netflix. I mean, I don't think the jury was really confused that the victim was Netflix, but it seems like you're trying to say that somehow that was confusing because of this materiality thing. Not at all, your honor. The jury certainly knew that the victim was Netflix, but the question was what type of harm is inflicted on Netflix? What, better said, what is necessary to inflict the harm on Netflix? And in fact, the error on the materiality instruction really had two components to it. One was it left open the possibility that lying to a vendor in order to get a contract, an advising contract with a vendor, was a violation of fiduciary duty to Netflix, and therefore that that would be sufficient. And it left open the possibility that, in fact, the other problem... But with that first one, I think lying to the vendor, I mean, it seems like you had to have a misrepresentation to Netflix. I just don't see that as very plausible, that first argument that really the jury was confused that it could really be cheating the vendor somehow. Your honor, the jury was not even required to find a misrepresentation in connection with honest services fraud. That's the other major problem with this. The model instruction at the time, and I believe so currently, actually refers to the materiality of an act. It doesn't say material misrepresentation. Now, first of all, the court held and banked that a material misrepresentation is an element of an honest services fraud claim. But secondly, your honors, that's how it's charged. And of course, when the government charges something in a particular way, it has to prove it in that particular way. So this instruction had two problems. Nobody actually was required to find a lie to Netflix at all. But, and worse than that, when the materiality element was tied to act, it essentially directed a verdict. Because Mr. Kyle's acts, by definition, were acts of Netflix. He had the authority to bind the company. And likewise, it was essentially a given that Mr. Kyle's acts in providing services, advisory services, would be material to the vendors. So the other problem, even if, and I don't think that, well, the jury knew what the government was getting at, is the way that the court usually evaluates instructions. But I think to your honors' point of, was it clear there had to be a misrepresentation to Netflix? Not at all, and quite the contrary, because in the context of honest services, the definition was an act must be material. Did you argue in your brief that there didn't need to be, that the problem with these instructions was that there didn't have to be any misrepresentation? Oh, yes, your honor. Where? Absolutely. I'll find it for the court. It's, it is, in fact, they are, it's really, the two components are addressed together, that it is, in fact, the misrepresentation, it is the absence of the misrepresentation, and it is the fact that, I am just looking at the honest services briefing, your honor, but I will find it. It is, in fact, the same point, and this is at, I'm getting there, 55, it begins on page 55 of the AOB, and it actually continues at some length because there are these two different threads of the error here, your honor, and they were mutually reinforcing. So I thought that this was about material to Netflix and whether it had to be to Netflix. I didn't understand this to be, there was no instruction that you needed a misrepresentation. Can you show me where that is? Yes, your honor, so page 56, for example, defense counsel objected that the government's proposed instructions did not require proof that the scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises or omitted facts. She pointed out that the indictment expressly charged those means, and the court confirmed that 1346 requires them in Milanovic, and that, in fact, was an express request by defense counsel to add to the proposed instructions by means of false or fraudulent pretenses, representations, promises, or omitted facts. I guess your position is the instruction 35A was not sufficient? It was not, your honor, for a number of reasons. First, as the court knows, it was really quite disconnected from the honest services fraud instructions. It came at the very end, and was, I believe it was 13 transcript pages. I counted between the end of the honest services fraud instructions. But equally- But it has the language that you want. It has the language on representations or promises. But here's the problem, your honor. First, it's a definition of intent to defraud, so it's a mens rea rather than an actus reis. Second, it doesn't say material. So there's still no requirement. This goes to Judge Friedland's question about how these two interconnected pieces reinforce each other. That definition and the intent to defraud is about just what Mr. Kyle intended, and it does not require materiality. So the jury is left then not knowing whether they're at least not required to find that the government has proved the actus reis that it chose to charge, which is that Netflix was deprived of honest services by means of materially false and fraudulent representations to it. And of course, as the court- An omission would count too, though, right? Yes, your honor. And that was, in fact, there's some substantial discussion of that at the charge conference because the government was taking the position that, really, they were taking, again, this fairly absolutist position that simply accepting secret payments would be sufficient to prove honest services fraud, given the nature of the fiduciary relationship. And defense counsel fleshes out correctly that the fiduciary relationship plays in in two ways there. Number one, of course, there has to be a duty to disclose, and Mr. Kyle didn't contest his fiduciary relationship, his fiduciary duty, but what he was saying is duty to disclose, okay, that's at least the predicate for the omission theory. And then the other component of the instructional error on honest services fraud, or maybe better said the thing that shows us there was no cure in the definition of fiduciary, as the 7th Circuit had observed in the Onspaw case that was cited below and in the briefing now, the definition of fiduciary says what do fiduciaries owe? Fiduciaries are supposed to put the employer's best interest above their own, and fiduciaries owe a duty of honesty. And so, essentially, that definition reinforced the idea that Mr. Kyle, who was not contesting his fiduciary status, having failed to disclose his own self-dealing per se violated his duty of honest services. Now that's something... I think you've taken up your time, so I'll give you three minutes for rebuttal, but let's hear from the government.  Thank you, Your Honor. Good morning, Your Honor, and may it please the Court. My name is Ross Mazur, and I represent the United States. To begin with, Judge Bress's question about harmlessness, I think it is the case that if the Court were to affirm on either the honest services or the property fraud theories, then there would be no remedy. The Court would not have to reach the other theory because both theories were charged in a single count. Under the Yates rule, constitutional error occurs only when the jury returns a general verdict that may rest on an invalid theory. Here that was not possible because the jury was given a specific unanimity instruction. And so if the Court were to uphold either theory, that would effectively end the inquiry. And do you think we would need to reach the constructive amendment issue? As I understand the constructive amendment issue, it pertains to the question of property fraud. Thank you both sides, and thank you for taking this case pro bono. We really appreciate your assistance. Because there would be no remedy, the Court would have to affirm on each of the counts. I don't think it's necessary, but I'd like to... We would have to decide that the honest services theory was enough to affirm, though, before we could say we didn't have to reach the constructive amendment, right? Yes, Your Honor, I think that's true. Your opposing counsel says, well, there's kind of a bleed over of the evidence, so you really do need to decide it. What's your response to that? The two theories were clearly distinguished in the jury instructions, the government's opening and the government's closing arguments. Is the proof different? Like, is there some evidence that would not have come in if the property fraud theory had not been charged? Not that I'm aware of, Your Honor. The evidence was exactly the same. Do you have a response to this motion in limine argument that came up about keeping out the evidence of whether there was value of these contracts? I think that was the suggestion. I didn't actually remember that from the brief, so maybe you could explain what your view of this motion in limine issue is. Yeah, I'm sorry, Your Honor, but I'm not familiar with exactly which motion Ms. Mathewson is referring to, but the issue of whether Netflix suffered an economic loss was litigated throughout the three-year history of this case from the motion to dismiss all the way through trial, which is a substantial portion of the evidence, focused on how much money Netflix lost, whether other less expensive alternatives were available to Netflix than the vendor contracts that Netflix offered as a result of the scheme. So I can't imagine that, and I don't think any evidence was excluded or that any evidence would have been excluded. But in the event the Court feels it needs to address the constructive amendment claim, I'd like to turn to that now if the Court wouldn't mind. That's fine. Okay. It is worth noting, I think, at the outset that the defense has not renewed their challenge to the denial of the motion to dismiss or raised any freestanding challenge to the sufficiency of the indictment. So any challenge would have to fall into one of these three categories, constructive amendment, jury instructions, or sufficiency of the evidence. But there was no constructive amendment here really for three simple reasons. The first is that the four corners of the indictment alleged a theory of property fraud, and this is on 2 ER 608 paragraph 21. Specifically, the indictment alleged a scheme to deprive Netflix of money it spent on more favorable contracts than it would have paid out absent the scheme to defraud. The Court can stop the inquiry there. That's the constructive amendment. But secondly, if the Court went further, it's simply not true that the government maintained throughout the trial that the indictment alleged only honest services fraud. And I point you to the motion to dismiss. This is District Court Doctrine number 23 at pages 1, 2, and 5. And the opposition to the motion to dismiss. This is District Court Doctrine number 30 at pages 6 and 6 to 7. Both documents were relied upon in the defense briefing, but are not in the excerpts of record. And in the motion to dismiss, the defense argued, one, that there was no property fraud because the vendors paid Mr. Kyle. So the defense argued against the government's theory of property fraud, but in so doing, recognized that the government had alleged that theory in the indictment. And then the government responded to that argument in its opposition. It's true the government's motion to dismiss then went on to attack the honest services fraud as well. But it made clear that it was attacking both separate theories, and the defense has not renewed that. And third, just lastly, even if the defense were correct, that the government made a statement suggesting that the indictment alleged honest services fraud, a constructive amendment analysis doesn't look at the party's subjective intentions, as this court recently made clear in Holmes. So for those reasons, I think there was no constructive amendment. Why don't you address the jury instructions on the honest services that your opposing counsel walked us through? I'd be happy to, Your Honor. So first, I understand the defense to be arguing that the jury instructions permitted a conviction for accepting compensation for legitimate advisory services. I think that argument is inconsistent with the requirement in the jury instructions that the jury must find a bribe or kickback. It would make no sense for the jury to be required to find a bribe or kickback for what were otherwise legitimate advisory services. Those would be inconsistent. The honest services fraud instructions also conveyed that the word services referred to in the instruction referred to the defendant's services as a Netflix fiduciary. And you can find that in the lengthy definition of, I think, fiduciary as well as bribe or kickback. The instructions also required a specific intent to defraud Netflix, which would also foreclose the defendant's argument that the instructions permitted a conviction for taking money from the vendors for legitimate advisory services. And the instruction per the defendant's request stated that undisclosed conflicts of interest are not honest services fraud. So the jury instructions clearly conveyed that the jury, in order to convict, had to find a violation of Mr. Kyle's fiduciary duty to Netflix in exchange for bribes or kickbacks. Now the- How about the use of false and fraudulent pretenses and representations? The material that's covered by instruction 35A, which your opposing counsel said, well, it's not sufficient because it's kind of towards the, it's a few pages later from the primary honest services instruction. The definition of bribes or kickbacks, your honor? Is that what- I think it would be the instruction about intent to defraud. The fourth element of the honest services fraud instruction was that Mr. Kyle acted with the specific intent to defraud by depriving Netflix of the right to honest services. There was, so there was no question that the victim was Netflix, that the misrepresentations and the material acts had to be material to Netflix. And so I think that the court, the district court correctly charged the scheme to defraud element, which again, is one of the for just taking compensation for legitimate advisory services. On the property fraud, if we can move to that, the argument's made that essentially this, you can't, you have to charge a mirror image. You have to basically say that the object of the property fraud, I take it, was to receive money directly from, to take Netflix's loss, to cause a loss to Netflix and to take that loss. I take it you disagree with that? I do, your honor. Yes. Sure. I would be happy to address that. First, let me repeat that the defense has not renewed their challenge to the motion, but it's missed. So they have to fit this challenge within their argument as to the jury instructions. But the, it is true that the Supreme Court in McNally decided to read the mail and wire fraud statutes as a unitary whole, even though they contain a disjunction, a scheme to defraud or for obtaining money or property. But McNally and all of the subsequent cases from Carpenter to Cleveland to to Kelly, to Simonelli, to Skilling, read the second clause of the disjunction or for obtaining money or property to limit the first clause in a very specific way that has nothing to do with the obtaining or the mirror image requirement. What the court said in McNally, this is the key language that got repeated in all of the cases I just mentioned, was that the money or property requirement in the second clause of the disjunction limits the reach of the scheme to defraud element in the first clause, because at common law, the phrase to defraud meant wronging one in his property rights. Now, I think the court can draw two conclusions. One, the word wronging is synonymous with a deprivation and does not mean the type of personal acquisition or mirror image gain and loss type of personal acquisition that the defense is arguing. And second, that the focus in McNally was not about using the word obtaining in the second clause of the disjunction to add anything to this court's holding in Miller that a scheme to defraud is a scheme to deceive and cheat. By emphasizing money or property, all the court was saying was that the scheme to defraud must have, as an object, money or property. In terms of interpreting this mirror image language in some of these Supreme Court opinions, or maybe it's just one, have other circuits agreed with you on this point, or have other circuits addressed this? Yes, Your Honor. This language came from skilling. It was to illustrate the general distinction between a property fraud and an honor services fraud type of offense. Both the Third Circuit and the Fifth Circuit have expressly rejected the idea that skilling's language about a mirror image somehow imposed a necessary requirement on property fraud. And is there reason to think any of this will be considered in the Cusices? I don't know if I'm pronouncing that correctly, but the case that the Supreme Court has now? I'm not sure if it's Cusices or not, but I'm sure Ms. Matthewson can correct me. No, I don't believe so. The salient fact in Cusices was that, at least according to the defense, that the city, PennDOT, did not lose any money. This was just a pure fraud in the inducement case, and that was the salient fact. In this case, the indictment alleged, and the government argued, that Netflix was deprived of the money that it spent on more favorable contracts than it would have paid out, absent the fraud. This is not a fraud in the inducement case. Where in the instructions did the jury have to find that? Is there somewhere in the instructions that the jury had to find that Netflix suffered a monetary loss compared to what would have happened? The instructions provided that the government had to prove a, I'm sorry, an intent to deceive and cheat. Right, so I don't know if that, I mean, it seems like what you just said to Judge Brass, to distinguish the Supreme Court case, suggested that here the jury definitely had to find that Netflix lost money, is how it paraphrased, I think, of what you just said, but I'm not sure that's in the instructions that the jury had to find that. That was the government's theory of the case. The jury was instructed on fairly standard property fraud instructions. In Cusisis, the government's theory was that the misrepresentation alone went to a property interest, and I believe the jury was instructed in that case on an intangible theory of property. The defense has not cited, and I am not aware of any court to find jury instructions invalid on an intangible right theory where the jury instructions didn't mention anything about intangible rights. The government did not proceed on that theory, and the defense only claim, really, is that the judge should have preemptively instructed the jury that property does not include intangible rights, which would only confuse them, since the government had never injected that theory into the case. Now, just to finish responding to Judge Brass's questions about distinguishing Cusisis, the other reason that... I'm sorry, let me just ask a follow-up about that, though. Isn't the honest services theory an intangible theory? So there was an intangible theory going on in this case? The honest services, yes, Your Honor. So I'm not sure it's fair to say that the jury wasn't thinking about intangible services or intangible rights. The jury was given two discrete sets of jury instructions. Of course, there's the presumption that the jury will follow them, and that the district court added some of the defendant's proposed language defining money or property as money or similar economic interest. Honest services was phrased in a completely different way, not a specific intent to deceive. You're saying in Cusisis, the property fraud actually had an intangible component to it, whereas here they were kept distinct in the instructions? Yes, Your Honor. And the other difference would be that Cusisis implicates a distinction between... asks whether an interest is a regulatory interest or is actually a property interest, which is a consideration unique to public sector cases and does not apply in private sector cases. Yes, one point that the defendant has raised on the property fraud instructions, that they talk about a scheme of plan for obtaining money or property, but they don't say Netflix is money or property, and that maybe the jury would infer it was a scheme to obtain the money or property of the startups. So how do you address that? Sure. I'm sorry, Your Honor. I think the instructions made clear that the victim in the case was Netflix. Multiple instructions refer to Netflix. Looking at the jury instructions on property fraud, the first element refers to a scheme or plan for obtaining money or property. The third element of a scheme... I'm sorry, an intent to deceive and cheat. The definition of a fiduciary refers to the defendant's role as a fiduciary specifically to Netflix. The defendant wanted language that said something like, you know, take something of economic value from the victim. And so that language is not in, you know, the district judge decided not to include that. But was it error not to include it or did it change the instructions? No, not at all. The district judge gave part of the instruction that a property interest is an economic interest. The district court did not give the rest of the instruction, much of which because it simply found confusing and because it would have injected intangible right theories into the government's theory of property fraud, which the government had never mentioned. Again, the defense hasn't cited any case holding that the district court erred in not instructing the jury on an intangible theory of property fraud when the government did not allege an intangible property right in its case. The other thing I would say in response to the jury instructions on property fraud is I think the defense is arguing that because there was still a disjunction that that allowed for a conviction on an intangible right theory. But all of the elements refer to a scheme in the singular, a scheme to defraud requires specific intent to defraud, which wouldn't make sense if a scheme for obtaining money or property were a second avenue to conviction. And by analogy, that's why this court in cases like Miller in 2020 and Xi in 2023, even with respect to an error in the jury instructions, the deceive or cheat error, whereas it was able to easily conclude that that error was harmless because the only reasonable way of reading the jury instructions was as permitting a single path to conviction. I would also add just that although all that is required in this case for the property fraud is for the defendant to devise a scheme to deprive Netflix of money, it was also the case that the defendant had a convoluted way of personally profiting from the scheme. In addition to approving contracts well beyond what Netflix would have approved, he got commissions from Vistara and NetRich, a percentage of every dollar Netflix lost. He got stock options from other startups. And there was a lot of testimony at trial about how valuable a contract with Netflix was to these startups. And so the benefit to the defendant was fairly direct by steering a contract to startups that otherwise would not have gotten those contracts, would have gotten less favorable contracts, would have gotten shorter term contracts. The jury could have certainly reasonably inferred that the value of stock options would have immediately and directly increased. Thank you, counsel. I think we've taken you through your time. Thank you, your honor. Let's put three minutes on the clock for rebuttal. Thank you, your honors. It's kousisis, but he tells me that in Greek it's kousisis. So time will tell what happens there. Let me explain why kousisis is not directly relevant but may be indirectly relevant. It's not directly relevant because the government has never accused Mr. Kyle of scheming to steal essentially from Netflix. What it has said over and over, and this goes to paragraph 21 of the indictment, is that this was a scheme that imposed costs on Netflix. It in fact resulted in loss to Netflix. But it was not a scheme devised for that subjective purpose. And this court has recognized for decades that in fact there is really a difference between consequence and objective. And it is simply not enough to say that there is an implementation cost, a certain loss that is imposed on the employer when the defendant has schemed to do something else. That's what we know from Kelly, for example. That's why the court's model instructions now say scheme or artifice to defraud for the purpose of obtaining money or property. Now they don't parse out the question of is it a third party's money or property or does it have to be the victim's. But this court has been saying that since the Lew decision back in 89, that property fraud requires that taking essentially, the transfer from victim to defendant. Here's where kousisis is made. I don't know that we've ever quite said it in that way. I mean why would it matter if you hear the allegations you essentially took money, had Netflix pay money to third parties, those third parties then paid money to the defendant. So why is that triangulation structured any meaningful distinction? For two reasons, Your Honor. First, it is certainly conceivable that there could be a scheme where somebody says, for example, I want to steal from my employer. The best way to do this is to get my buddy who owns a dump truck to jack up his invoices and we're going to pretend that he made 10 visits a month instead of only five and then we'll split the money. That's a scheme to steal from the employer. It's not a kickback scheme. Now the reason that the distinction really matters is that, well again, first just to look at Kelly, there of course there was no exchange, there was no transfer from one person to the other. But there was a different objective by the defendant, you know, I wanted political retribution, for example, and I'm going to impose the cost of this on my employer. And the Supreme Court said, no, you need a taking, you need conversion. This can take us back to Coussis's because in fact my colleague here is taking a position that is diametrically opposed to the position the Solicitor General is taking in Coussis's. And I cited in the reply brief the oral argument transcript where the SG points out, the McNally was about. The government focuses on the idea that there was no deprivation proven in McNally. There was no proof that the victim there, the Commonwealth of Kentucky would have paid more or gotten better insurance. But the next page of McNally talks about the point that a kickback paid by an undeceived third party, that's how Skilling puts it later, is not in fact the employer's money. It's been paid to the third party. If the employer roots it back, that is, I'm sorry, if the third party roots it back, that is getting an undeceived third party's money by a scheme to deprive the employer only of the intangible services. It's not the taking. So we know that that's the official position of the Department of Justice. With the court's upon, and of course I don't want to mislead the court, but regardless, the point stands that the defense had no notice until literally three weeks before trial that there was in fact property fraud theory. And the government didn't prove what Netflix would have spent otherwise or prove that in fact these items were worthless to Netflix because the government never proved what the alternatives were. The government said in opening... I think I need to cut you off because you're over your rebuttal time unless anyone has further questions. No, okay. Thank you both sides for the helpful arguments. Thank you, Your Honor. This case is submitted and we are adjourned for the day. All rise. This court for this session stands adjourned.
judges: Boggs, FRIEDLAND, BRESS